STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**June 7, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.H.**

**No. 20-0950** (Mercer County 19-JA-81-MW)

**MEMORANDUM DECISION**

Petitioner Father R.H. III, by counsel John G. Byrd, appeals the Circuit Court of Mercer County's October 26, 2020, order terminating his parental rights to R.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Monica Holliday, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative, such as terminating his custodial rights only.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed an abuse and neglect petition against petitioner and the mother based upon petitioner's domestic violence against the mother and her two children.[2] Specifically, the DHHR alleged that in May of 2019, petitioner struck and beat the children with belts and with his hand resulting in busted lips, bleeding ears, and other injuries. The DHHR also alleged that the children reported witnessing domestic violence between their mother and petitioner. The respective Child Protective Services ("CPS") and law enforcement agencies of West Virginia and Virginia had collaborated since May of 2019 to protect the mother and children from petitioner by implementing a domestic violence protective order in Virginia and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]These children are not at issue on appeal.

1

implementing in-home safety services and a temporary protection plan in West Virginia. In July of 2019, the mother gave birth to R.H., petitioner's only child with the mother and the only child at issue in this appeal. The mother then violated the domestic violence protective order and the DHHR's restrictions by moving back in with petitioner with newborn R.H. The mother left her two oldest children at the maternal grandfather's residence in Bluefield, West Virginia. The DHHR filed a petition for abuse and neglect against petitioner and the mother in West Virginia as the children were living in Bluefield, West Virginia.[3] After the DHHR made several offers to take the mother and her three children to the domestic violence shelter and the mother refused, the DHHR sought emergency ratification of the children's removal. The mother and R.H.'s paternal grandmother actively evaded CPS and attempted to thwart the children's removal. The DHHR also learned that petitioner had an extensive criminal history in West Virginia and Virginia that included numerous convictions and pending charges of domestic assault, domestic battery, attempted malicious wounding, and child abuse resulting in injury. Thereafter, petitioner waived his preliminary hearing.

The circuit court held an adjudicatory hearing in September of 2019, wherein petitioner stipulated to abusing the mother's two older children as evidenced by their various injuries. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent in regard to all three children. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period, which the circuit court granted. The case plan required petitioner to obtain and maintain employment and housing, participate in parenting and adult life skills classes, submit to drug screens, exercise visitations with R.H., undergo a psychological evaluation, and participate in the Batterers Intervention and Prevention Program ("BIPP"). Most importantly, the family case plan required that the mother and petitioner not have contact. At a review hearing held in December of 2019, the circuit court continued the mother and petitioner's improvement periods despite the DHHR's proffers that the parents denied the allegations of domestic abuse. The circuit court ordered petitioner and the mother to attend domestic violence counseling.

At a status hearing in March of 2020, the guardian reported that the mother and petitioner continued to have contact and were living together in direct violation of their case plans. The guardian further expressed skepticism with petitioner and the mother's excuses that they suffered from scabies and pink eye, which prevented them from participating in the remaining terms of their improvement periods, such as supervised visitations. The guardian proffered that the mother continued to work despite the alleged contagious diagnosis and that a DHHR worker observed the mother to be healthy with no skin rashes or bug bites. The circuit court noted that the mother and petitioner were permitted to appear by phone for the hearing due to this alleged excuse and ordered that they provide medical documentation of their diagnoses. The guardian also proffered that petitioner tested positive for methamphetamine during a drug screen for a criminal proceeding a couple of weeks prior to the hearing.

Prior to the dispositional hearing, the guardian filed a report stating that, according to a service provider, petitioner had been completely uncooperative with services and wished to relinquish his parental rights but chose not to for fear of angering the paternal grandmother. The

---

[3]Bluefield sits on the border between West Virginia and Virginia. Petitioner lived in Bluefield, Virginia, while the mother stayed in Bluefield, West Virginia.

report further stated that the paternal grandmother disclosed that petitioner threatened to kill her and was abusing methamphetamine. The report further stated that petitioner was inconsistent with scheduling services and failed to provide medical documentation as previously ordered. The guardian recommended terminating petitioner's parental rights based upon his failure to complete BIPP courses, seek mental health treatment, maintain consistent visitation with R.H., fully participate in parenting and adult life skills classes, maintain negative drug screens, and overall failure to make progress with his improvement period.

In September of 2020, the DHHR moved to terminate petitioner's and the mother's improvement periods, citing their lack of compliance. At the dispositional hearing the same month, the DHHR worker testified that petitioner began BIPP courses in December of 2019 but stopped participating in all aspects of his improvement period in January of 2020. He also stated that the mother and petitioner claimed to suffer from the same contagious infections when they were ordered to have no contact. The worker explained that the mother dropped the domestic violence protective order against petitioner. As further evidence that neither the mother nor petitioner took the no-contact order of the court seriously, the worker testified that both obtained jobs at the same Arby's fast-food restaurant and that when petitioner was placed on home incarceration and living at a hotel, the mother obtained a second job at the same hotel. While at the hotel, petitioner was arrested in August of 2020 when home incarceration officers found methamphetamine in the room among the mother's belongings. The mother later admitted to abusing methamphetamine and being with petitioner. Finally, the worker said that he was unaware whether petitioner was employed but knew that petitioner lacked stable housing. Next, petitioner's home incarceration officer testified that petitioner pled guilty to domestic battery in January of 2020, and the circuit court sentenced him to one year of home incarceration in June of 2020. She reported that petitioner tested positive for alcohol and marijuana in January of 2020, methamphetamine and marijuana in February of 2020, and marijuana in June of 2020. The DHHR then called a service provider who stated that petitioner had been noncompliant with his supervised visitations with R.H.

Finally, petitioner testified that he was not employed and lived "here and there" in McDowell County, West Virginia. Petitioner stated that he was unable to obtain low income housing due to his criminal charges. He said that he did not participate in video visits with R.H. because he saw "no reason to." He further stated that he did not complete BIPP classes due to lack of transportation and that he complied with his parenting and adult life skills classes. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by its order entered on October 26, 2020. Petitioner appeals the dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[4]The mother's parental rights were also terminated below. The permanency plan for the child is adoption by a foster family.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than employing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5), such as termination of petitioner's custodial rights only. Petitioner relies on this Court's holding that "[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under [W. Va. Code § 49-4-604] will be employed." Syl Pt. 1, in part, *In re R. J. M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). According to petitioner, he complied with some portions of the requirements of his improvement period, showing that he could one day get "on his feet" and have his custodial rights restored if he had retained his parental rights. Petitioner contends that the termination of his custodial rights only would not have seriously threatened the child's welfare. Finally, he argues that terminating his custodial rights only would not have required the court to "exhaust every speculative possibility of parental improvement." *Id*.

We find that the circuit court did not err in terminating petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence shows that petitioner failed to follow through with a reasonable family case plan. While it is true that petitioner complied with some aspects of his case plan, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Most importantly, petitioner failed to address the leading allegation of abuse—his perpetrating domestic violence. Indeed, petitioner denied any issues of domestic violence to service providers, never

4

completed domestic violence counseling, and continued to have contact with the mother against the court's orders. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Additionally, the record shows that petitioner never completed his BIPP course due to his reincarceration and failure to stay in touch with the DHHR workers and providers after January of 2020. Furthermore, petitioner tested positive for methamphetamine during the proceedings and was unemployed and lacked stable housing by the dispositional hearing. As such, it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Given that this finding was based upon substantial evidence, petitioner's argument that the circuit court should have terminated his custodial rights only to allow him time to demonstrate that he could correct the conditions of abuse and neglect must fail. This is especially true in light of R.H.'s young age. As we have previously noted,

> the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257, 470 S.E.2d 205, 211 (1996). As petitioner cited above and in further support that young children deserve stability and certainty,

> "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Petitioner claims that the child's welfare is not seriously threatened yet admits that he did not complete the requirements of his case plan. As the conditions of abuse and neglect still existed by disposition, the child remained in danger and, therefore, we find no error in the circuit court's finding that termination of petitioner's parental rights was necessary for the child's welfare.

Finally, we have held that

5

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, petitioner was not entitled to a less-restrictive dispositional alternative, and, we find no error in the termination of his parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 7, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton